UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **VANESSA BRYANT JACKSON** | **CIVIL ACTION** |
| **VERSUS** | **NO: 09-0069-SS** |
| **STATE OF LOUISIANA THROUGH THE DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT** | |

**ORDER**

PLAINTIFF'S MOTION FOR NEW TRIAL (Rec. doc. 34)

**DENIED**

On February 21, 2010, the plaintiff, Vanessa Bryant Jackson ("Jackson"), filed a motion for a new trial. For the reasons described below the motion is denied.

**BACKGROUND**

On January 19, 2009, Jackson filed a complaint against the State of Louisiana through the Department of Transportation and Development ("DOTD") and alleged several causes of action, including a claim under the Americans with Disabilities Act of 1990 ("ADA") (42 U.S.C. 12101). Rec. doc. 1. The parties consented to proceed before a Magistrate Judge. Rec. doc. 13. The DOTD filed three motions for summary judgment. All of Jackson's claims were dismissed. Rec. docs. 19 and 32. The only claim which Jackson contends should not be dismissed is her ADA claim. Rec. doc. 32 at 2, n. 1 and Rec. doc. 34.

**ANALYSIS**

In <u>EEOC v. Chevron Phillips Chemical Co., LP</u>, 570 F.3d 606 (5th Cir. 2009), the Fifth Circuit stated:

> The party moving for summary judgment bears the burden of identifying the portions of the record that demonstrate the absence of a genuine issue of material fact. The nonmovant must then point to or produce specific facts demonstrating that there is a genuine issue of material fact. We construe all facts and inferences in the light most favorable to the nonmovant, and we will not weigh evidence or evaluate the credibility of witnesses.

Id. at 615. In Chevron, the EEOC alleged that the defendant discharged an employee who suffered from chronic fatigue syndrome ("CFS") in violation of the ADA. The district court found no violation of the ADA. In reversing, the Fifth Circuit stated that:

> Two kinds of error are palpable in the magistrate judge's ruling. First, the court misunderstood and misapplied the legal standards under the ADA for determining the duration, permanency, and severity of a condition like CFS. Second, the magistrate judge failed to draw the required reasonable inferences from the record in Netterville's favor that support finding that she had an ADA disability from the summer of 2002 through and after her discharge on February 27, 2003.

Id. at 618.

In her motion for new trial, Jackson contends that the applicable legal standard was misapplied because hindsight was used to conclude that her condition was a temporary non-chronic impairment of short duration with no permanent impact. Jackson cites the statement in Chevron that, "[i]n an ADA case, the relevant time for assessing the existence of a disability is the time of the adverse employment action." Id. at 618. Jackson also contends that DOTD is enforcing a *de facto* 100% healed policy which is contrary to the law.

A.   Chronic (indefinite duration) v. non-chronic (temporary).

Jackson does not disagree with the following discussion of this issue in the January 12, 2010 order:

> In EEOC v. Chevron Phillips Chemical Co., 570 F.3d 606 (5th Cir. 2009), the Fifth Circuit stated:
>
> > [A]n impairment that substantially limits or is expected to

> substantially limit a major life activity and whose duration is indefinite and unknowable or is expected to be at least several months qualifies as a disability under the ADA.
>
> Many courts have recognized that relapsing-remitting conditions like multiple sclerosis, epilepsy, or colitis can constitute ADA disabilities depending on the nature of each individual case.
>
> In contrast, temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities. 29 C.F.R. § 1630.2(j); *Pryor v. Trane Co.,* 138 F.3d 1024, 1026 (5th Cir.1998) (same). Examples of temporary, non-disabling impairments include: "broken limbs, sprained joints, concussions, appendicitis, and influenza." 29 C.F.R. § 1630 app., § 1630.2(j); *see Evans v. City of Dallas,* 861 F.2d 846, 852 (5th Cir.1988) (considering claim that knee surgery constituted a disability under The Rehabilitation Act).

570 F.3d at 618 (some citations and quotation marks omitted). In Pryor, the Fifth Circuit rejected the plaintiff's assertion that her injury, surgery, hospitalization, and inability to work for two years established as a matter of law that she had a record of a disability for purposes of the ADA. 138 F.3d at 1028. In Evans, the Fifth Circuit affirmed a summary judgment on a claim under the Federal Rehabilitation Act of 1973, 29 U.S.C. § 794. It agreed with the district court that Evans' knee injury which required surgery was transitory in nature. It said:

> Although the injury may have limited Plaintiff's life activities during his recuperation, Plaintiff does not allege that it continues to do so; nor does he contend that others regard him as having an impairment that continues to do so. At first glance Plaintiff might be supposed to have a record of such an impairment. However, subsections (i) and (iii), cast in the present tense, . . . contemplate an impairment of a continuing nature. . . . See, *Southeastern Community College v. Davis*, 442 U.S. 397, 405-06, n.6 [99 S.Ct. 2361, 2366-67 n.60, 60 L.Ed.2d 980](1979).

861 F.2d at 853-54.[1] See also Ray v. Glidden Company, 85 F.3d 227 (5th Cir. 1996), (the Fifth Circuit affirmed the district court's grant of summary judgment on plaintiff's ADA claim where the plaintiff missed more than a year of work and underwent surgeries to replace his hips and shoulders).

---

[1] Section 706(8)(B) of the Federal Rehabilitation Act employs language similar to that found in the ADA. Compare Evans, 861 F.2d 852, n. 38 to Pryor, 138 F.3d at 1026.

B.   The disability in Chevron.

The evidence in Chevron is pertinent to Jackson's objection to the January 12 order. In 1987, the employee, Lorin Netterville, suffered her first onset of CFS symptoms. After being diagnosed with CFS, she was treated and her symptoms disappeared. In 2000, she became a temporary employee for Chevron. In April 2001, she became a permanent employee. 570 F.3d at 608. In May 2002, she began to experience significant sleep disruptions and other symptoms. In January 2003, Dr. Patricia Salvato diagnosed her with a recurrence of CFS. "In her affidavit, Dr. Salvato stated that she expected Netterville's CFS-related substantial limitations to be permanent." Id. at 609 (emphasis added). Thereafter, Netterville reported her condition to her employer and provided it with information from Dr. Salvato. In February 2003, she was terminated. Id. at 612. The Fifth Circuit noted that in determining whether an individual is substantially limited in a major life activity, the EEOC advises that courts consider the duration or expected duration of the impairment. Id. at 615. After explaining the difference between chronic and non-chronic conditions (see portion of Chevron quoted above), the Fifth Circuit said: "[t]he consensus of the medical community is that CFS is a chronic disease of indefinite duration for which there is no known cure, since its etiology is not understood." Id. at 619.

The Fifth Circuit stated:

[T]he crucial question is whether Netterville was suffering an ADA disability at the time of her discharge on February 27, 2003. Applying the appropriate ADA and summary judgment standards, the record reflects that Netterville's CFS symptoms began to manifest themselves in June or July of 2002, continued through and after her discharge on February 27, 2003, and were of sufficient severity and of expected duration to constitute an ADA disability throughout this entire period. Thus, contrary to the magistrate judge's understanding, Netterville's disability was not "intermittent," "short-lived" or "non-permanent."

Id. at 618. It concluded that a jury could reasonably find that Netterville was disabled under the

4

ADA at the time she was discharged. Id. at 620.

C.  Undisputed Facts.

The following are the undisputed facts of this case as set forth in the January 21, 2010 order:

1. Jackson was employed by DOTD from 1995 through July 7, 2008.

2. She experienced right hip pain which was diagnosed as a labral tear.

3. On November 11, 2007, she requested FMLA leave which was granted.

4. On February 1, 2008, she underwent surgery on her right hip.

5. Although her physician reported that she could return to light duty on May 19, 2008, Tate notified her that she could not return to light duty.

6. After she exhausted her FMLA leave, she remained off of work on sick leave through June 9, 2008.

7. Her doctor cleared her to return to work on July 14, 2008.

8. On June 11, 2008, DOTD notified her that it intended to terminate her by non-disciplinary removal.

9. On June 18, 2008, she requested annual leave until July 14, 2008.

10. On June 30, 2008, DOTD terminated Jackson in accordance with Civil Service Rule 12.6(a)(1).

11. At the time of her deposition, she was not under any disability.

Rec. doc. 32 at 3. In her motion for rehearing, Jackson does not dispute any of these statements.

In Chevron, the Fifth Circuit considered the statement from Dr. Salvato in her affidavit on the expectation that Netterville's CFS-related substantial limitations would be permanent and the consensus in the medical community that CFS is a chronic disease of indefinite duration. 570 F.3d at 609 and 619. Jackson has not presented any such evidence. There are no affidavits from her treating physicians. None of the persons on her witness list are identified as a medical doctor. Rec.

5

doc. 21. The only medical evidence is the certificates from her physicians concerning her ability to return to work. See Exhibit 7 to Rec. doc. 25. These records reveal that:

1. On November 12, 2007, Dr. James Hess reported that Jackson had been under his care since November 5, 2007 and she was able to return to work on November 13, 2007.

2. On November 30, 2007, Dr. Forrest Dugas reported that Jackson had been under his care since November 26, 2007 and she was able to return to work on December 4, 2007.

3. On December 12, 2007, Dr. Rex Houser, a neurologist, requested that Jackson be excused from work through December 17, 2007.

4. On December 14, 2007, Dr. Houser requested that Jackson be excused from work through January 5, 2008.

5. On December 17, 2007, Dr. Houser completed a DOTD form in which he reported that: (a) Jackson had right leg pain which would resolve with rest and physical therapy; (b) the duration of her condition was one month; and (c) the condition was not chronic.

6. On January 8, 2008, a physician at Ochsner Clinic Elmwood reported that Jackson could not return to work until January 25, 2008 and a MRI was scheduled.

7. On January 10, 2008, Dr. Houser excused Jackson from work until January 17, 2008.

8. On January 17, 2008, a health care provider indicated that Jackson would be off work or would need to work less than a full schedule for ten to twelve weeks.

9. On January 21, 2008, a health care provider at Ochsner reported that: (a) Jackson had a right hip labral tear; (b) she would have surgery; (c) she was not able to work; and (d) her estimated return to work was March 2008.

10. On March 5, 2008, Dr. M. Suri at Ochsner reported that: (a) Jackson was unable to work due to her post surgical status; and (b) a further notice would be provided on April 1, 2008.

11. On March 12, 2008, Dr. Suri estimated that Jackson could return to work in six weeks.

12. On April 8, 2008, Dr. Suri reported that Jackson was on pain medication and in physical therapy. It was estimated that she could return to work on May 8, 2008.

6

13. On April 23, 2008, Dr. Suri reported that: (a) Jackson could do sedentary activity for one month followed by light work for one month; and (b) thereafter she could perform her job activities as tolerated.

14. On April 28, 2008, Dr. Suri estimated that Jackson could return to work on June 9, 2008.

15. On June 2, 2008, Dr. Suri estimated that she could return to work on July 14, 2008.

Rec. doc. 25 (Exhibit 7).

While the doctors repeatedly postponed her estimated return date, none of them stated that: (a) Jackson's recovery from the surgery would leave her with permanent conditions which would affect her ability to perform her job activities; and (b) her condition was chronic and of indefinite duration. The statements from the physicians demonstrate that at the time of her discharge Jackson suffered from a temporary non-chronic impairment of short duration with no permanent impact. With all favorable inferences drawn to Jackson, no reasonable jury could conclude otherwise. To reach this conclusion, it is not necessary to consider the fact that at the time of her deposition she was not under any disability.

D.  100% healed policy.

In its motion for summary judgment on the ADA claim, the DOTD contended that: (a) at the time of her termination Jackson was not suffering from a disability because her right hip condition was not permanent; and (b) assuming that she was suffering from a disability at the time of her discharge, she was not a qualified individual with a disability as her physician had not cleared her to return to work. Rec. doc. 25 at 14. The January 21, 2010 order states:

> Because Jackson did not suffer from a disability under the ADA, it is not necessary to consider the DOTD's alternative argument that Jackson cannot establish that she is a qualified individual with a disability.

Rec. doc. 32 at 5-6.

With reference to the DOTD enforcing a 100% healed policy in contravention of ADA precedent, Jackson raises an argument which she did not make in opposition to DOTD's motion for summary judgment. There is no reference in the opposition (Rec. doc. 29) to an improperly applied 100% healed policy. Jackson contends that: (a) she had a disability; (b) she was a qualified individual with a disability; and (c) there are material issues of fact as to whether DOTD engaged in dialog concerning the parameters of the accommodation she requested in response to her first and second requests for an accommodation. Rec. doc. 29. In her motion for a new trial, Jackson contends that DOTD improperly employed a 100% healed policy to deny her request to take seven days of annual leave in lieu of sick leave. Rec. doc. 34.

Jackson is alleging that DOTD failed to make a reasonable accommodation for her disability that would have permitted her to perform the essential functions of her job and instead required her to be 100% healed. To succeed in such a claim Jackson must establish that: (a) she had a disability; (b) she was qualified for the job; (c) DOTD knew of her disability; (d) she requested an accommodation; (e) a reasonable accommodation existed that would have allowed her to perform the essential functions of the job; and (f) DOTD failed to provide reasonable accommodation. See Riel v. Electronic Data Systems Corporation, 99 F.3d 678 (5th Cir. 1997); and Fifth Circuit Pattern Jury Instructions - Civil (2006), Section 11.7.2 ADA - Failure to Accommodate. For the reasons described above, Jackson did not have a disability. There is no need to consider whether DOTD improperly applied a 100% healed test in denying her requests for accommodation.

IT IS ORDERED that Jackson's motion for new trial (Rec. doc. 34) is DENIED.

New Orleans, Louisiana, this 25th day of February, 2010.

_____
**SALLY SHUSHAN**
**United States Magistrate Judge**